**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES N. JOHNSON, | No. C-11-5081 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*, | **(Docket No. 28)** |
| Defendants. | |
| _____/ | |

## I.   INTRODUCTION

Pending before the Court is Defendant's motion for summary judgment.  Plaintiff, a former firefighter for Defendant the City and County of San Francisco ("CCSF"), brings claims against CCSF, the San Francisco Fire Department, and the CCSF Employee Retirement System under § 1981 and California's Fair Employment and Housing Act ("FEHA").  Plaintiff retired in 2009, and now claims that CCSF has not appropriately credited his pension for all of his years of work.  His dispute with Defendants arises out of several years of unpaid medical leave he took around 2004-2006.  Though the terms of Plaintiff's pension plan provide that periods of unpaid leave are not credited towards years of service for pension calculation purposes, he alleges that he should receive credit for these years because CCSF wrongfully delayed necessary surgery for his on-the-job injury and refused to accommodate him with light duty work after his surgery.  As a result, he remained on unpaid leave against his wishes.  Defendant now moves for summary judgment, arguing that Plaintiff's claims regarding CCSF's allegedly discriminatory actions around the period of unpaid

**United States District Court**
For the Northern District of California

1  medical leave are time barred.  Additionally, Defendant argues that Plaintiff's claims are barred by

2  res judicata, as he previously brought a state court suit regarding CCSF's alleged wrongdoing with

3  regards to the medical leave.

4  ## II.   FACTUAL & PROCEDURAL BACKGROUND

5  Plaintiff is an African American resident of the City and County of San Francisco.

6  Declaration of Charles N. Johnson ("Johnson Decl.") ¶ 1 (Docket No. 35).  He began working for

7  the San Francisco Fire Department ("SFFD") on January 15, 1979.  *Id.* ¶ 3.  He retired on October

8  17, 2009, 30 years, 9 months, and 2 days after beginning to work for SFFD.  *Id.*  Despite this,

9  Defendant CCSF calculated his pension eligibility based on between 27 and 28 years of service.  *Id.*

10  ¶ 4.[1]  This discrepancy stems from a period of unpaid disability leave Plaintiff took in 2004-2007.

11  Newport Decl. Ex. A; Johnson Decl. ¶¶ 5-8.

12  A.   San Francisco Employees' Retirement System

13  Defendant CCSF operates the San Francisco Employees' Retirement System ("SFERS"), a

14  defined benefit pension plan for city employees.  Newport Decl. ¶ 3.  This plan is governed by the

15  San Francisco City Charter and Administrative Code.  *Id.*  Employees covered by SFERS contribute

16  a percentage of their earnings; CCSF also makes contributions to the plan.  *Id.* ¶ 4.

17  When an employee retires, their monthly pension payment is calculated using a set formula

18  based on age at time of retirement, years of service, and final compensation.  *Id.*; San Francisco City

19  Charter § A8.598-2 (Declaration of Rafal Ofierski ("Ofierski Decl.") Ex. H, Docket No. 31).  The

20  City Charter specifies that:

21  > The following time shall be included in the computation of the service
   > to be credited to a member of the fire department for the purposes of
22  > determining whether such member qualified for retirement and
   > calculating benefits . . . :
23

24  > (a)   Time during and for which said member is entitled to receive
   >       compensation because of services as a member of the police or
   >       fire department.
25

26  ---

27  [1]  In his declaration, Plaintiff states that his pension was calculated based on 27.158 years of service.  Johnson Decl. ¶ 4.  However, the declaration of Maria Newport, the pension administrator, states that Defendant CCSF calculated Plaintiff's pension eligibility based on 27.504 years of

28  service, and provides supporting documentation to that effect.  Declaration of Maria Newport ¶ 7, Ex. A (Docket No. 29).  The parties do not comment on this discrepancy.

United States District Court

For the Northern District of California

*Id.* § A8.598-10(a).  The Charter contains a provision permitting an employee on unpaid parental leave to purchase credit towards the retirement system, but contains no such provision for employees on unpaid medical leave.  *Id.* § A8.598-10(e).  The Charter contains no provision allowing for equitable or discretionary adjustments in the calculation of years of service.  *Id.*

B.      Plaintiff's Disability Leave

In October 2001, Plaintiff suffered an injury during the course of his employment.  Johnson Decl. ¶ 6.  In 2002, Defendant denied Plaintiff's workers' compensation claim.  *Id.*  Plaintiff challenged this denial, and in 2005, won a case in front of an administrative judge, who granted Plaintiff's claim for the industrial industry.  *Id.*  While the claim was pending, Defendant refused to authorize a hip replacement surgery Plaintiff required because of the injury.  *Id.* ¶ 5.  Once Plaintiff won his case in front of the administrative judge, Defendant CCSF ultimately authorized surgery in 2006.  *Id.* ¶ 6.  After recovering from the surgery, Defendant was finally able to return to work in June 2007.  *Id.*

As a result of the injury, the denial of the surgery, and the post-surgical recovery time, Plaintiff was off work for several years.  *Id.* ¶ 7.  In his declaration, Plaintiff states that he was off work from November 2002 to June 2007.  *Id.* ¶ 7.  During this time, Defendant denied Plaintiff light duty work, despite the fact that other firefighters were given light duty positions.  Ofierski Decl. Ex. F at 2.  As a result, he was unable to make payroll contributions to SFERS, and thus was not credited for these years in pension calculations.  Johnson Decl. ¶ 8; Newport Decl. ¶ 7, Ex. A.

It appears, however, that Plaintiff was only denied service credit for some of this period of time.  The declaration of SFERS administrator Maria Newport, and documentation she attaches from the SFERS system, indicates that Plaintiff was denied service credit from some point in 2004 to mid-2007.  Newport Decl. ¶ 7, Ex. A.  Plaintiff himself alleges that he was denied only 3.592 years of retirement credit.  Johnson Decl. ¶ 8.  There is some discrepancy about the exact number of years of service credit Plaintiff was denied.  In his declaration, Plaintiff states that his pension was calculated based on 27.158 years of service.  Johnson Decl. ¶ 4.  However, the declaration of Maria Newport, the pension administrator, states that Defendant CCSF calculated Plaintiff's pension eligibility based

United States District Court
For the Northern District of California

on 27.504 years of service, and provides supporting documentation to that effect.  Declaration of

Maria Newport ¶ 7, Ex. A (Docket No. 29).  The parties do not comment on this discrepancy.

Plaintiff alleges that this denial of service credit was based on race discrimination and

retaliation.  Johnson Decl. ¶ 8.  Plaintiff's opposition to the instant motion does not elaborate on the

allegation that the denial of the years of service credit was retaliatory and discriminatory.

C.    State Court Lawsuit

In January 2006, Plaintiff filed suit against Defendant CCSF and SFFD in California

Superior Court, alleging race and disability discrimination, retaliation, wrongful termination in

violation of public policy, and intentional infliction of emotional distress.  Ofierski Ex. A (Superior

Court Complaint).[2]  In this suit, Plaintiff alleged that he sustained a work-related injury in 2001, and

that he was placed on medical leave as a result.  Id. ¶ 15.  He alleged that though his physician

released him to work in September 2004 with restrictions limiting him to sedentary work, CCSF

refused to return him to a position that accommodated his medical restrictions.  Id. ¶¶ 16-20.  The

complaint alleged that CCSF's decision not to return him to work was motivated in substantial part

by Plaintiff's race and disability, and that the decision was also in retaliation for Plaintiff's request

for reasonable accommodations.  Id. ¶¶ 24, 31, 38-39.

On January 18, 2007, the Superior Court granted summary judgment to Defendants.  Ofierski

Ex. D.  The court found that CCSF had made numerous attempts to contact Plaintiff and his

physician about finding modified work that was within his medical limitations.  Id. at 2-3.  CCSF

was ultimately unable to find an appropriate light duty position within SFFD, but in August 2005 the

city offered Plaintiff a light duty position with CCSF's Department of Public Works.  Id. at 3-4.

Though Plaintiff initially accepted, he later changed his mind and rejected the offer.  Id. at 4.  The

court found that Plaintiff failed to produce evidence supporting his claims of race discrimination and

retaliation.  Id. at 6-7.  Plaintiff had relied only on conclusory statements in his own declaration, and

---

[2]  Plaintiff objects to Exhibits A-D to the Ofierski Declaration, which are various documents from the state court case.  Plaintiff states that these documents are "irrelevant and unrelated to any issue in this action," but does not further explain this argument.  Pl.'s Mot. at 6.  As Defendant's motion for summary judgment is based in part on the theory that Plaintiff's instant suit is barred by res judicata, these documents are directly relevant to determining whether the state court case should be given res judicata effect.  Plaintiff's objection to these exhibits is thus **OVERRULED.**

1   complaints about racially discriminatory practices between 1990 and 1996, which the court found

2   too remote to support an inference of discrimination almost ten years later. *Id.* at 6-7.

3   D.      Recent Acts of Retaliation

4          Plaintiff's opposition to the instant motion raises allegations of various instances of

5   discrimination or retaliation that occurred between 2007 and Plaintiff's retirement in 2009.  For

6   example, Plaintiff alleges that at some point in 2007 he attempted to purchase a copy of SFFD's

7   Rules and Regulations from the Department's Division of Training because he needed to study for a

8   work-related examination.  Johnson Decl. ¶ 10.  The officer at the Division of Training refused to

9   sell him a copy of the Rules and Regulations, laughing at his request and telling him to return

10  another day.  *Id.*  He also alleges that an SFFD Lieutenant improperly ridiculed him in front of other

11  employees for an infraction that he had not in fact committed.  *Id.* ¶ 11-12.  When a nearby coworker

12  attempted to join the conversation and criticize Plaintiff, "this led to an almost altercation" between

13  Plaintiff and the coworker.  *Id.* ¶ 13.  Plaintiff was apparently written up over this incident, though

14  he refused to sign a form indicating that he had attacked the coworker.  *Id.* ¶ 14.  He also filed

15  complaints against both the supervisor and coworker, but no action was taken.  *Id.* ¶ 14.  None of

16  these incidents were mentioned in Plaintiff's complaint, and he offers no explanation for how they

17  are relevant to his claims in this case.

18         Plaintiff also states that upon returning to duty in June 2007, he was told that since he could

19  not return to his old position, he would have to return as a Lieutenant.  *Id.* ¶ 15.  He was told that he

20  would initially be assigned to the Division of Training to review General Orders, training

21  procedures, and the like.  *Id.*  As he was in a Lieutenant's position, Plaintiff argues that he "should

22  have been retired as a Lieutenant," but that Defendant refused to do so for retaliatory reasons.  *Id.* ¶

23  16.  Again, these allegations were not raised in Plaintiff's complaint.  *See* Docket No. 24.  While

24  they do pertain to Plaintiff's right under his pension, they raise a theory regarding his entitlement to

25  pension benefits that is entirely unrelated to the allegations in his complaint.

26                                  **III.   DISCUSSION**

27         Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if

28  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

2  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine

3  only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See*

4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of

5  evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

6  the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in

7  the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the

8  nonmovant's favor. *See id.* at 255, 106 S.Ct. 2505.

9  　　　　Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion

10 for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to

11 establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*,

12 477 U.S. 317, 322 (1986). However, where a defendant moves for summary judgment based on an

13 affirmative defense for which it has the burden of proof, the defendant "must establish beyond

14 peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor."

15 *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir.2003) (internal quotation marks

16 and emphasis omitted); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177

17 (9th Cir.2006) (noting that a defendant bears the burden of proof at summary judgment with respect

18 to an affirmative defense).

19 A.　　Statute of Limitations

20 　　　　Defendant argues that Plaintiff's claims are untimely, as the allegedly unlawful acts on

21 which they are based – the "compelled" unpaid leave ending in June 2007 – occurred outside any

22 applicable statute of limitations. Though Plaintiff's claims have different statutes of limitation, the

23 longest of these is four years. *See Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1007 (9th

24 Cir. 2011), *as amended* (Aug. 19, 2011) (statute of limitations for § 1981 retaliation claims is four

25 years; statute of limitations for § 1981 discrimination claims is two years); Cal. Civ. Proc. Code §

26 343 (statute of limitations for actions against government entities generally four years); Cal. Civ.

27 Proc. Code § 343 (limitations period shorter for claims with certain administrative prerequisites).

28 Individuals wishing to bring claims brought under the Fair Employment and Housing Act ("FEHA")

United States District Court

For the Northern District of California

1    must file a pre-litigation administrative claim within one year of the allegedly unlawful acts, except

2    that this period may be extended for an additional 90 days where the aggrieved individual first

3    obtains knowledge of the allegedly unlawful acts after the one year period has run.  Cal. Gov. Code

4    § 12960(d).  In his complaint, Plaintiff alleges that he filed an administrative complaint with the

5    California Department of Fair Employment and Housing ("DFEH") on October 18, 2010.  FAC ¶

6    26.  The instant lawsuit was filed on October 17, 2011.

7        Plaintiff alleges that his claims are timely because the action he challenges is Defendant's

8    denial of 3.592 years of credit to his pension upon his retirement on October 17, 2009.  Pl.'s Mot. at

9    9.  As an initial matter, this would appear to make his DFEH administrative claim untimely by one

10   day, even if the statute of limitations did not begin to run until the date of Plaintiff's retirement.  In

11   any event, Plaintiff's argument that the limitations period does not begin to run until the date of his

12   retirement fails.

13       Generally, the statute of limitations on a cause of action begins to run "when the plaintiff

14   knows or has reason to know of the injury which is the basis of the action."  *Lukovsky v. City &*

15   *County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).  In addressing when the cause of

16   action accrues for adverse employment decisions with delayed repercussions, the Supreme Court has

17   held that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which

18   the *consequences* of the acts became most painful."  *Delaware State Coll. v. Ricks*, 449 U.S. 250,

19   258 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis in

20   *Ricks*).  In *Ricks*, the plaintiff was a college professor who had been denied tenure, and then given a

21   one year terminal employment contract, as was customary for professors who were denied tenure.

22   *Id.* at 252-54.  The Court held that the limitations period began to run when the plaintiff was denied

23   tenure, not when the one year contract terminated because the "termination of employment at

24   Delaware State is a delayed, but inevitable, consequence of the denial of tenure."  *Id.* at 257-58.

25       In this case, there is a clear provision in the City Charter providing that employees receive

26   pension credit for years of service for periods of time for which they are "entitled to receive

27   compensation."  S.F. City Charter § A8.598-10.  This, by its plain meaning, excludes periods of

28   unpaid leave, and Plaintiff offers no argument to the contrary.  The portion of the Charter governing

United States District Court

For the Northern District of California

1  the calculation of years of service does not provide for discretion or equitable adjustments to the

2  credited years of service.  Given this clear rule, the denial of pension credit for Plaintiff's unpaid

3  medical leave is merely the "delayed, but inevitable, consequence" of the medical leave itself.  Like

4  the original acts of discrimination in *Ricks*, it is the allegedly wrongful denial of work prior to June

5  2007 (when Plaintiff returned to work) – resulting in Plaintiff being ineligible for pension credit –

6  that is the triggering cause of Plaintiff's putative injury in this case.  Thus, the statute of limitations

7  began to run no later than June of 2007, when he returned to work.[3]  Contrary to Plaintiff's

8  arguments at the hearing, once Plaintiff had suffered the alleged injury of being improperly forced to

9  take unpaid leave, he could have brought suit seeking future damages from the lost years of pension

10  credit.  Accordingly, Plaintiff was required to file an administrative claim for his FEHA claims by

11  June 2008, which he failed to do.  Similarly the statute of limitations for his last claim ran in June

12  2011.  This suit, not filed until October 2011, is untimely.

13         Plaintiff also argues that his claim is timely because he is alleging that the denial of

14  retirement credit is the result of discrimination and retaliation against him between June 2007 and

15  his retirement on October 17, 2009.  Pl.'s Mot. at 9.  Plaintiff offers no more than the conclusory

16  allegation that the denial was discriminatory or retaliatory; he points to nothing in the record

17  indicating the basis for this belief.  He does not allege any facts indicating that the denial of credit

18  was in any way discretionary, or was anything other than the application of the rules governing the

19  calculation of years of service under the relevant sections of the City Charter.  Indeed, as noted

20  above, under the applicable provisions of the City Charter, Defendants lacked the discretion to credit

21  Plaintiff with years of service for the time that he was on unpaid disability leave.  S.F. City Charter §

22  A8.598-10.

23         Plaintiff also argues that Defendant is equitably estopped from denying Plaintiff additional

24  retirement credit because it was Defendants' wrongdoing as found by an administrative law judge in

25  2005 – in denying the workers' compensation claim – that compelled Plaintiff to take unpaid leave.

_____

27  [3]  Plaintiff's claims of more recent discrimination are completely unrelated to his claims that
Defendants are wrongfully denying him years of service in calculating his pension.  Additionally,
these recent discriminatory incidents were not plead in the complaint, and are thus not the subject of
28  the case at bar.

The cases Plaintiff cites, however, concern situations in no way analogous to the case at bar, and provide no support for his position. *See In re Marriage of Recknor*, 138 Cal. App. 3d 539, 546 (Ct. App. 1982) (husband was equitably estopped from claiming invalidity of the marriage when he knew at the time of the wedding that his wife's divorce was not final, and he subsequently lived with her for 15 years, fathering two children); *Drinnon v. Oliver*, 24 Cal. App. 3d 571, 575 (Ct. App. 1972) *disapproved of on other grounds by Johnson & Johnson v. Superior Court*, 38 Cal. 3d 243 (1985) (no equitable estoppel for insured's failure to inform insurer of underlying suit where insurer had repeatedly and wrongfully denied coverage).

Further, it does not appear that the doctrine of equitable estoppel applies here. Under California law, "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Baillargeon v. Dep't of Water & Power*, 69 Cal. App. 3d 670, 679 (Ct. App. 1977). There is nothing in the case at bar that indicates that Defendants were appraised of certain facts of which Plaintiff was ignorant, nor that Plaintiff relied upon any conduct of Defendants in any way that caused him injury. Thus, Plaintiff cannot establish equitable estoppel here.[4]

As the statute of limitations began to run no later than June 2007, the statute of limitations has run on all of Plaintiff's claims, and the suit must therefore be dismissed as untimely.

B.   Res Judicata Effect of State Court Suit

Even if Plaintiff's claims were timely, it appears that most or all of this dispute is barred by res judicata. Plaintiff brought suit based on similar allegations of discriminatory, retaliatory, and

---

[4] Though Plaintiff does not raise this issue, it is possible that there is some res judicata effect on this issue from the workers' compensation proceedings finding that Defendant was required to pay for the surgery. *See* Johnson Decl. ¶ 6; *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). There are no documents from that proceeding in the record, however, so it is not possible to determine whether the decision of the administrative judge has any preclusive effect here.

**United States District Court**
For the Northern District of California

1  unlawful "compelled" medical leave in his 2005 state court suit.  Federal courts look to state law to

2  determine the preclusive effect of state court judgments.  *Henrichs v. Valley View Dev.*, 474 F.3d

3  609, 615 (9th Cir. 2007).  Under California law, the elements of res judicata are:

> (1) A claim or issue raised in the present action is identical to a claim
> or issue litigated in a prior proceeding; (2) the prior proceeding
> resulted in a final judgment on the merits; and (3) the party against
> whom the doctrine is being asserted was a party or in privity with a
> party to the prior proceeding.

7  *People v. Barragan*, 32 Cal. 4th 236, 253 (2004) (internal quotation marks omitted).  Here, the

8  second two elements are clearly met, as there was a final judgment in the state court action, and

9  Plaintiff was a party to the suit.  *See* Ofierski Decl. Ex. D.

10  The question of whether a claim or issue is identical to one raised in a previous suit is

11  analyzed by looking to whether the suits sought to vindicate the same primary rights.  *Boeken v.*

12  *Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).  The California Supreme Court has noted:

> As far as its content is concerned, the primary right is simply the
> plaintiff's right to be free from the particular injury suffered.  It must
> therefore be distinguished from the legal theory on which liability for
> that injury is premised:  Even where there are multiple legal theories
> upon which recovery might be predicated, one injury gives rise to only
> one claim for relief.  The primary right must also be distinguished
> from the remedy sought:  The violation of one primary right
> constitutes a single cause of action, though it may entitle the injured
> party to many forms of relief, and the relief is not to be confounded
> with the cause of action, one not being determinative of the other.

19  *Crowley v. Katleman*, 8 Cal. 4th 666, 681-82 (1994) (internal citations and quotation marks

20  omitted).

21  Plaintiff offers only a conclusory argument that res judicata does not apply here, saying that

22  "this action in no way relates to or relitigates a claim that involves an alleged violation of the same

23  primary right and same operative factual allegations as a previously adjudicated claim between the

24  same parties."  Pl.'s Opp. at 12.  Looking at the allegations in the allegations and the court's findings

25  in the state court suit, however, it appears that the instant case concerns the same primary right as

26  that earlier litigation.  As discussed above, Plaintiff's complaints about denial of pension credit stem

27  entirely from the earlier period of unpaid medical leave.  In both cases, Plaintiff alleged that he was

28  compelled to take this leave because Defendant refused to provide him with appropriate light duty

**United States District Court**
For the Northern District of California

1   work while he was recovering from his back injury.  *Compare* Ofierski Decl. Ex. A ¶ 16-20 (state

2   court complaint) *with* Ofierski Decl. Ex. F at 2 (Plaintiff's interrogatory responses in the instant

3   case).

4          The only real difference between the two suits is that in the instant case Plaintiff alleges that

5   the period of unpaid leave was caused in part by Defendant's refusal to timely authorize surgery for

6   Plaintiff's workplace injury.  Johnson Decl. ¶ 5.  It does not appear that this allegation was raised in

7   the state court proceeding.  As this additional allegation concerns a different period of time, and a

8   different wrong allegedly committed by Defendant in keeping Plaintiff from work, it would appear

9   that it does not involve the same primary right as the claims raised in Plaintiff's state court suit.

10         In any case, res judicata bars Plaintiff's claims here at least for the period of time that

11   Plaintiff could have performed light duty work, as the denial of light duty work was fully litigated in

12   the state court action.  The allegations in that case state that Plaintiff's physician released him to

13   light duty work in September 2004.  Ofierski Decl. Ex. A ¶ 16.  As discussed above, there are

14   discrepancies in the parties' statements regarding the exact amount of credit Plaintiff has been

15   denied in this case.  It is thus not entirely clear that all of the denied time dates from after September

16   2004, although it would appear that the majority of it does.  *See* Newport Decl. Ex. A (Plaintiff was

17   credited with full years of service for 2002-2003, and was credited with 0.524 years of service for

18   2004).  Given this, Plaintiff's claims are barred by res judicata for most of years of service he claims

19   he was wrongfully denied as a result of Defendants' refusing to provide Plaintiff with appropriate

20   light duty work.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.   CONCLUSION**

As Plaintiff's claims are untimely and largely barred by res judicata, Defendants' motion for summary judgment is **GRANTED.**  Judgment will be entered in favor of Defendants and against Plaintiff.  The Clerk shall close the file.

This order disposes of Docket No. 28.


IT IS SO ORDERED.


Dated:  April 15, 2013

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California